## LOVETT v. FAIRCLOTH.[*]

### In re LILLY.

(Circuit Court of Appeals, Fifth Circuit. December 21, 1925.)

No. 4466.

1. Bankruptcy ⊖188(1)—Lien given or accepted in contemplation of bankruptcy cannot be upheld, though there be present consideration.

A lien given or accepted in contemplation of bankruptcy cannot be upheld, in view of Bankruptcy Act, § 67d (Comp. St. § 9651), even though there be a present consideration.

2. Bankruptcy ⊖303(3)—Evidence held to show that lien was given and accepted in contemplation of bankruptcy.

As respects a conveyance given to secure a loan, evidence *held* to show lien was given and accepted in contemplation of bankruptcy, under Bankruptcy Act, § 67d (Comp. St. § 9651).

3. Evidence ⊖64—One is presumed to intend the natural consequences of his acts.

One is presumed to intend the natural consequences of his acts.

4. Bankruptcy ⊖303(3)—Evidence held to show that debtor intended to hinder and delay creditors by conveyance, and conveyance therefore void.

As respects conveyance given to secure a loan, evidence *held* to show grantor's intent to hinder and delay creditors, and that lender advanced money with full knowledge of such intent, invalidating conveyance, under Bankruptcy Act, § 67e (Comp. St. § 9651).

5. Bankruptcy ⊖180—Proof of intent to hinder and delay is proof of actual fraud.

Proof of intent to hinder and delay creditors is proof of actual fraud, and a conveyance so made is as much within terms of Bankruptcy Act, § 67e (Comp. St. § 9651), as is a conveyance made with intent not to pay creditors at all.

Appeal from the District Court of the United States for the Southern District of Georgia; William H. Barrett, Judge.

In the matter of H. F. Lilly, trading as H. F. Lilly & Co., bankrupt. S. J. Faircloth intervened, claiming a valid lien on bank-

*Certiorari denied 46 S. Ct. 355, 70 L. Ed. ——.

rupt's property. J. A. Lovett, trustee in bankruptcy, objected to the claim, and appeals from an order holding the lien superior to claims of unsecured creditors. Order reversed, and cause remanded for further proceedings.

Stanley S. Bennet, of Quitman, Ga., and Otis H. Dukes, of Valdosta, Ga. (Bennet & Bennet, of Quitman, Ga., and Whitaker & Dukes, of Valdosta, Ga., on the brief), for appellant.

Sam T. Harrell, of Quitman, Ga., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This is an appeal by a trustee in bankruptcy from an order of the District Court holding that a valid lien superior to the claims of unsecured creditors existed on practically all of the bankrupt's property.

In May, 1924, H. F. Lilly, the bankrupt, was a merchant and owned a stock of dry goods at Quitman, Ga. At that time he also owned some real estate, which was valued at from $3,000 to $5,000, but it was mortgaged to secure a loan of $3,500, and 84 shares of stock of the Southern Machinery Company, of the par value of $100 per share, but he had put it up as collateral security for loans aggregating $7,775. He testified that this stock in 1923 yielded $3,600 in dividends. He further testified that his unincumbered property, including the stock of goods, other personal property, and some real estate, would ordinarily be worth between $20,000 and $30,000, but that on account of depressed business conditions the stock of goods was worth about $12,500. His unsecured indebtedness was about $30,000, made up as follows: $15,000 to general creditors; $4,525 to the People's National Bank of Quitman, of which only $200 was due; $10,000 to the Bank of Quitman, of which not in excess of $3,000 was due. He was being pressed by his creditors, other than the banks. Several claims had been placed in the hands of attorneys and he was unable to pay them. In this situation he determined to pay his unsecured debts to the banks, whether such debts were due or not, and let his other creditors wait. To accomplish that purpose, he applied to S. J. Faircloth, his brother-in-law, for a loan of $15,000.

Faircloth spent two or three days considering the application, investigating the value of Lilly's unincumbered property, and consulting with his attorneys as to whether a conveyance of all of it would be good as against the claims of creditors. He owned the $3,500 mortgage above mentioned, and ascertained from Lilly that the latter's unsecured debts amounted to about $30,000, and estimated the value of the stock of goods under the conditions then existing at $13,000, Lilly's equity in Southern Machinery Company stock at $5,000, and his other unsecured property at $2,000, or a total of $20,000. Faircloth fully understood that it was Lilly's intention to pay the entire proceeds of the loan applied for to the banks, to the exclusion of other creditors. He knew that some of the notes held by the banks were not due, that other creditors were threatening to sue, and that the only hope of paying them was based upon dividends to accrue from the incumbered stock Lilly held of the machinery company and upon profits to be derived from the sale of goods. Faircloth was also a merchant and experienced in business affairs. He discussed with his attorney the possibility that an involuntary petition in bankruptcy might be filed against Lilly.

Under these circumstances, on May 16, 1924, Lilly executed to Faircloth a note for $15,000, payable on demand, and secured it by a conveyance of the stock of goods and all other property owned by him, except the real estate, upon which there was already a mortgage to Faircloth of $3,500. Faircloth testified that the note was made payable on demand at his direction, in order that, in the event of involuntary bankruptcy proceedings, he could immediately take possession of all property covered by his conveyance, but that, unless such bankruptcy proceedings were instituted, it was his intention to allow the loan to run on indefinitely, in the hope that eventually the claims of all creditors would be paid.

The conveyance made was similar in all material particulars to a conveyance which in Brice v. Lane, 90 Ga. 294, 15 S. E. 823, was held sufficient to pass title to the grantee. In payment of the debts to the banks, Faircloth delivered to Lilly his draft on a bank at Valdosta, and then borrowed from the People's Bank $5,000, and from the Bank of Quitman $10,000, with which he bought Savannah exchange and sent it to the bank at Valdosta to make good the amount of the draft he had delivered to Lilly. The Bank of Quitman held Lilly's note for $4,000, secured by 40 shares of his stock, but this note was not paid. It is claimed by both Lilly and Faircloth that the banks at Quit-

man, whose debts were thus paid, knew nothing of the transactions in question. Faircloth admits that he deliberately refrained from discussing the matter with the banks, in order that no question of preference could be raised.

The conveyance was immediately recorded, and on May 21 its validity was challenged by an involuntary petition in bankruptcy. Lilly answered, and alleged that the conveyance was made in good faith, but admitted his inability to pay his debts; and consented to be adjudged a bankrupt. Faircloth intervened, and set up his conveyance as a valid lien. The trustee objected to the allowance of the lien claimed upon the grounds (1) that it was given and accepted in contemplation of bankruptcy, and not in good faith, and therefore was rendered invalid by section 67d of the Bankruptcy Act (Comp. St. § 9651); and (2) that the conveyance was made with the intent and purpose on the part of the bankrupt to hinder, delay, or defraud creditors in violation of section 67e of the Bankruptcy Act, and that Faircloth was not a purchaser in good faith.

The District Judge, in an opinion reviewing the facts, expressed his belief in the truthfulness of Lilly's and Faircloth's testimony to the effect that the lien was given and accepted in the hope that the loan thereby secured would enable Lilly to avoid bankruptcy, continue in business, and ultimately pay all his debts. Upon that testimony he based the conclusion that the lien was given and accepted in good faith, and not in contemplation of bankruptcy, and consequently held that the lien was not affected by section 67d of the Bankruptcy Act. Having upheld the good faith of the parties, the District Judge also, and quite logically, held that the conveyance of Lilly's property was not made with the intent and purpose to hinder, delay, or defraud creditors within the meaning of section 67e.

[1, 2] Section 67d recognizes as valid liens created in good faith. If a lien be given or accepted in contemplation of bankruptcy, it cannot be upheld, even though there be a present consideration. 2 Collier on Bankruptcy (13th Ed.) 1533. Notwithstanding the finding of fact by the District Judge, and giving due weight to it, we are of opinion that the undisputed evidence conclusively shows that the lien in question was given and accepted in contemplation of bankruptcy. Lilly and Faircloth were both business men of experience. Lilly's business was in such condition that he was unable to pay claims which were in the hands of the attorneys at Quitman, who were demanding payment. He knew he was insolvent under business conditions then existing, and determined to prefer the local banks by using his assets for their benefit. The banks were not pressing for payment, and there was no reason for making a conveyance of all his property to secure them, except that he knew he was in danger of being forced into bankruptcy. Faircloth admits that he had the notes securing his loan made payable on demand, so as to take possession of the property in the event of bankruptcy, and his testimony throughout shows, not only that he was thoroughly conversant with what was taking place, but also that he joined in the plan to have the banks paid and the property transferred, so as to be beyond the reach of the other creditors. He did not invest money he already had, but borrowed from each of the banks at Quitman the amount approximately that Lilly owed it on unsecured debts. One of these banks had security for a loan of $4,000, and that was not paid, doubtless for the reason that it was already protected from the claims of unsecured creditors.

[3] It is a fair inference that the loans were paid to the preferred banks at Quitman through banks in other cities, for the purpose of keeping such preferred banks as far removed from the transaction as possible. One is presumed to intend the natural consequences of his acts. A debtor, who knows he cannot pay his debts, who knows he is insolvent, and who makes a transfer of all his property for the purpose of making a preferential payment, commits an act of bankruptcy, and must know that proceedings in bankruptcy will probably be instituted against him. One who accepts a lien on such a debtor's property, and thus attempts to withdraw it from the reach of creditors, with full knowledge that the debtor is insolvent, is not acting in good faith toward the creditors who are discriminated against. If Lilly and Faircloth expected the creditors to acquiesce, they were hoping against hope, and, as if in realization of this, they took precautions to prepare against a petition in bankruptcy by making the loan payable on demand and placing the title in Faircloth, in order that he could take immediate possession of the property in the event of bankruptcy. Under these circumstances, it cannot reasonably be said that bankruptcy was not contemplated.

[4] The evidence also shows without conflict that it was Lilly's intent to hinder and delay

creditors, and further that Faircloth advanced his money with full knowledge of such intent. We are therefore of opinion that the conveyance was also void under section 67e.

[5] It is contended that this section refers only to actual fraud, and that none is here shown. We think that proof of intent to hinder or delay is proof of actual fraud. Bump on Fraudulent Conveyances, 73. A conveyance made with intent to hinder or delay creditors is as much within the terms of section 67e as is a conveyance made with intent not to pay them at all. If this were not true, the words "hinder or delay," which usually appear in statutes against fraudulent conveyances, would be meaningless. Counsel for appellee rely on the following cases decided by the Supreme Court: Coder v. Arts, 213 U. S. 223, 29 S. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008; Van Iderstine v. National Discount Co., 227 U. S. 575, 33 S. Ct. 343, 57 L. Ed. 652; Dean v. Davis, 242 U. S. 438, 37 S. Ct. 130, 61 L. Ed. 419.

There is nothing inconsistent with the view we have expressed, but much in support of it, to be found in these cases. In Coder v. Arts, the bankrupt knew he was insolvent, but Arts, who had advanced him money, did not. It is true that the court there held that actual fraud was necessary, but it immediately said in that connection: "It makes no difference that the conveyance was made upon a valuable consideration, if made for the purpose of hindering, delaying or defrauding creditors."

In the Van Iderstine Case, the Discount Company had no knowledge of any intent on the part of the bankrupt to defraud, and, though the court upheld the conveyance, it said: "Conveyances may be fraudulent, because the debtor intends to put the property and its proceeds beyond the reach of his creditors, or because he intends to hinder and delay them as a class, or by preferring one who is favored above the others."

In Dean v. Davis, supra, it is said: "A transfer, the intent (or obviously necessary effect) of which is to deprive creditors of the benefits sought to be secured by the Bankruptcy Act, 'hinders, delays or defrauds creditors,' within the meaning of section 67e." And again: "But where the advance is made to enable the debtor to make a preferential payment with bankruptcy in contemplation, the transaction presents an element upon which fraud may be predicated."

There is clear recognition in each of these cases that a conveyance made with intent to hinder or delay is fraudulent, and should be set aside as against one who is not a purchaser in good faith.

The order appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.