MARY DUNNING ROSE, Appellant, *v.* MALCOLM C. ROSE and Another, Respondents.

First Department, April 6, 1934.

*David P. Siegel* of counsel [*Milton B. Seasonwein* with him on the brief; *David P. Siegel*, attorney], for the appellant.

*Jerome C. Lewis*, for the respondents.

UNTERMYER, J. The plaintiff, formerly the wife of the defendant Malcolm C. Rose, is his judgment creditor by virtue of the assignment to her of a judgment recovered against him by the First National Bank of East Orange, N. J. She instituted this action to set aside, as in fraud of creditors, transfers made by Rose of all his property to the Homeric Holding Co., Inc. At the conclusion of the plaintiff's case her complaint was dismissed.

Considering the evidence most favorably to the plaintiff, as under the circumstances we must, it is very clear that the complaint should not have been dismissed. The transfers against which this action is directed were made by Rose to the Homeric Holding Co., Inc., three months after the commencement of the action which resulted in the plaintiff's judgment and at a time when Rose himself declared, " I was bankrupt." By the transfer Rose was divested of all his property in favor of a corporation

which had no substantial assets except such as he transferred. For the property conveyed he received no consideration out of which the plaintiff could have satisfied her judgment. Indeed, the only consideration which has been suggested is an oral arrangement whereby Rose agreed to pay the earnings derived from his medical practice to the corporation and the corporation agreed to manage the property and to pay his current personal and professional expenses. It is evident that Rose's creditors would receive no benefit from this. No cash or note or tangible property was given in return. He testified, as did the former treasurer of the corporation, that he did not even receive stock of the corporation for the property transferred. Whether this arrangement constituted " fair consideration " for the $15,000 or $20,000 of property transferred was a question which, to say the least, the plaintiff was entitled to have considered as a question of fact. Even if not insolvent before the transfer, Rose was rendered so in consequence thereof. This, in the absence of a fair consideration, would alone have been enough, even at common law, to create a rebuttable presumption of fraudulent intent. (*Smith* v. *Reid*, 134 N. Y. 568; *Kerker* v. *Levy*, 206 id. 109; *Ga Nun* v. *Palmer*, 216 id. 603.) Whether under the statute (Debtor and Creditor Law, § 273) that presumption has been made conclusive, we need not decide. It is sufficient that the legal presumption, even if rebuttable, was not rebutted but was strengthened by other circumstances from which the transfer derives color and significance.

The former treasurer of the Homeric Holding Co., Inc., testified that the corporation was formed following his suggestion to Rose that he protect his assets against the consequences of the pending litigation. After the corporation was organized the personal and professional expenses which it assumed were paid by checks executed in blank by the corporation and given to Rose, who, as occasion required, filled in the name of the payee and the amount of the check. Deposits in the corporate bank account were made by Rose, who at all times was in possession of the pass book of the corporation. All the officers and directors of the corporation appear to be trusted friends. This is manifest not only from the manner in which the affairs of the corporation are conducted but from his testimony that " I have every trust in these people," and " they trust me." At some future time it is intended that the assets of the corporation shall be restored to Rose, though he was unable to say " exactly when that will occur." These facts, mostly elicited upon the examination of Rose in supplementary proceedings, leave no possible doubt that, at least *prima facie*, the purpose and effect of the arrangement was to secure to the judgment

debtor the beneficial use of his property while at the same time placing it beyond the reach of execution by his creditors.

It is true that as part of this arrangement the corporation assumed Rose's debts, but this does not deprive the transfers of their unlawful character. (*Shapiro* v. *Wilgus*, 287 U. S. 348; *Dearing* v. *McKinnon Dash & Hardware Co.*, 165 N. Y. 78.) By the conveyances the plaintiff was none the less prevented from satisfying her judgment out of the assets of the judgment debtor. A failing debtor cannot in this way require creditors to follow assets into other hands. It is precisely such transactions, devised to " hinder and delay," even if they do not actually " defraud " creditors, which the statute is intended to prevent. (Debtor and Creditor Law, § 276; Glenn Fraud. Conveyances [1931], p. 5.) A judgment creditor is immediately entitled to satisfy his judgment out of the assets of his debtor and any conveyance, except by assignment for the benefit of creditors, whereby that right is intended to be hindered or delayed, is forbidden by the statute. (*Grover* v. *Wakeman*, 11 Wend. 187; *Hyslop* v. *Clarke*, 14 Johns. 458.)

Having reached the conclusion that the court should not have dismissed the complaint, it is unnecessary to pass upon the question raised by the plaintiff's appeal from the order denying her motion for a new trial under section 442 of the Civil Practice Act.

The judgment and order should, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event.

FINCH, P. J., MERRELL, MARTIN and O'MALLEY, JJ., concur.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.