## HOFMANN v. LA FONTAINE.

### No. 2489.

District Court, D. Wyoming.

Aug. 6, 1936.

C. R. Ellery and A. G. McClintock, both of Cheyenne, Wyo., for plaintiff.

J. A. Greenwood and Wilfred O'Leary, both of Cheyenne, Wyo., for defendant.

KENNEDY, District Judge.

This suit was first filed on the equity side, but subsequently one of the causes of action was dismissed without prejudice by agreement of the parties and the remaining three causes transferred to the law side of the court. When the case was brought to trial, a motion was made requiring the plaintiff to elect upon which cause of action he would proceed, and thereupon the second cause of action was selected.

In the second cause of action it is alleged that on the 22d day of May, 1931, an involuntary petition was filed against Robert N. La Fontaine and that before an adjudication took place therein the bankrupt

filed an involuntary petition on April 5, 1932. Thereafter said La Fontaine was adjudged a bankrupt in the voluntary proceeding, saving by order the rights of creditors under the involuntary proceeding and consolidating the two proceedings in bankruptcy as having been commenced on May 22, 1931. Hofmann, the plaintiff, was thereafter appointed trustee of the bankrupt's estate and qualified as such, and in the prosecution of this suit is acting in such capacity. The assets of the estate are alleged to be insufficient to pay the creditors in the amount of some $40,000. On May 7, 1931, the bankrupt is alleged to have paid his wife the sum of $4,165 for the purpose of indemnifying her against loss in connection with a transaction upon which she was one of the signers of a note with the bankrupt and others, secured by a mortgage upon real estate, and that for four months immediately preceding the 22d day of May, 1931, when the first petition in bankruptcy was filed, the said Robert N. La Fontaine was insolvent, which insolvency has ever since existed and still exists. It is further alleged that said condition of insolvency was well known throughout the county of Laramie and to the defendant, Florence B. La Fontaine. The petition then states that the defendant by such payment obtained a greater percentage of her claim than other creditors of the bankrupt of the same class, and that unless said preference is set aside they will not receive more than 22 per cent. of their claims, and that the said defendant in receiving said sum of money from the bankrupt had reasonable cause to believe that he was insolvent. It is further alleged that the transfer was not received by the defendant in satisfaction of any secured claim or any claim having priority under the law, that no consideration was received by the bankrupt from the defendant in return for the amount transferred, and that the transfer was made with intent to hinder, delay, or defraud creditors. Briefly, the defendant by answer admits the allegations as to the bankruptcy proceedings, the position of the defendant in connection with the transaction of signing the note, admits the transfer of the money from Robert N. La Fontaine to herself, but pleads that the money was used to pay the note at the special direction of La Fontaine and was used solely for such purpose. She denies that any act on the part of the defendant was done for the purpose of hindering, delaying, or defrauding creditors.

Upon the trial the plaintiff introduced the formal proofs not admitted by the pleadings concerning the transaction of giving the note and mortgage which the defendant had jointly executed with the bankrupt and others, together with the documentary evidence of a warranty deed by the defendant of the property involved in the transaction with a covenant which warranted the title against encumbrance, except as to taxes and special assessments. The plaintiff then rested, and the defendant moved for judgment upon the ground that the proofs were not sufficient to sustain any verdict for plaintiff in the cause. The motion was overruled, and the defendant thereupon elected to put in her evidence. At the close of the trial each party made a motion for a directed verdict in his favor. Thereupon the court with consent of counsel dismissed the jury from further consideration of the case. The case was orally argued, rulings upon the motions having been reserved, the matter taken under advisement, and trial briefs have been submitted.

From the admissions in the pleadings and the evidence adduced at the trial, the following statement is a brief summary of the pertinent facts: On March 31, 1931, the Investors' Syndicate, a corporation, filed a suit against Robert N. La Fontaine, praying for a judgment in the total sum of approximately $40,000. While said action was pending, the involuntary petition in bankruptcy was filed by the Investors' Syndicate as a creditor, on May 23, 1931, which was thereafter joined in by other creditors of La Fontaine. On February 1, 1932, a judgment was rendered in the Investors' Syndicate suit against La Fontaine for the sum of approximately $39,000. On April 5, 1932, La Fontaine filed his voluntary petition in bankruptcy and an order was made adjudicating him a bankrupt. Thereafter said bankruptcy proceedings were consolidated and treated as one proceeding as having been commenced upon the date of the involuntary proceeding, May 23, 1931. The total claims filed and allowed in said proceeding amounted to about $53,000, and the assets coming into the hands of the trustee from the bankrupt's estate were around $12,000. In April, 1926, La Fontaine and his wife, the defendant, together with one Hartney and his wife, executed a promissory note in the sum of $4,000 to one Harry Farthing, secured by a mortgage on Cheyenne real estate. In June, 1929, the La Fontaines and the Hartneys exe-

cuted and delivered to one Nan O'Neil a warranty deed of the mortgaged real estate, guaranteeing the same against all encumbrances except taxes and special assessments. At the time the deed was delivered the note and mortgage to Farthing had not been paid and still stood as an encumbrance upon said real estate. Farthing as holder of the note and mortgage pressed his claim for payment, and Nan O'Neil pressed her claim against La Fontaine and the defendant, based upon the warranty in the deed given to her. Miss O'Neil employed an attorney, as did the defendant, in the matter of the claim upon the warranty, which led to the consummation of the transaction here involved, by which La Fontaine delivered over to the defendant in cash the sum of approximately $4,200, which the defendant deposited in her account and by check paid the same to Farthing in satisfaction of his note and mortgage, taking to herself an assignment of such note and mortgage. Such assignment certified that the principal sum remaining due on the note and mortgage was $4,000. The note was indorsed by Farthing without recourse. The assignment of the mortgage and a release of the same were subsequently filed for record in the county clerk's office on June 6, 1932. The proofs further developed that, at the time La Fontaine turned over the money to the defendant, he was carrying a considerable amount of cash in a safety deposit box in one of the local banks, of which the defendant testified she was fully aware. The evidence showed that the real estate upon which Farthing held the mortgage was more than ample to pay the obligation evidenced by the note. The defendant testified that she was not a creditor of La Fontaine and that in the transaction she merely acted as his agent in paying off the Farthing note and mortgage. She also testified that she had read in the papers of an offer made by La Fontaine to compromise with his creditors, appearing a few days before she received the cash from her husband and paid the same to Farthing.

Counsel for the defendant complains that the trial court committed error in not sustaining the defendant's motion for judgment at the close of the plaintiff's case. In overruling this motion the court adopted the theory that, upon the proofs introduced by the plaintiff, the burden had shifted to the defendant, by which she was required to then show the bona fides of the transaction, relying upon the case, among others,

of First National Bank v. Swan, 3 Wyo. 356, at page 373, 23 P. 743, 750, where it is said: "Conveyances made upon a valuable consideration are not presumptively fraudulent, although the grantor's indebtedness exceeds the value of all his property. The transaction, in the absence of proof to the contrary, is held to be only a change of assets. The rule is different as to voluntary conveyances. These create a presumption of intent to defraud existing creditors, but this presumption is disputable, not conclusive. When a voluntary conveyance is attacked as fraudulent by an existing creditor, the burden is on the opposite party to show by proof the condition of grantor's affairs at the time, the amount of his indebtedness, and such other facts and circumstances as will tend to rebut the presumption. If this is not done, the presumption of law must govern, and the conveyance held fraudulent. In Dunlap v. Hawkins, 59 N.Y. [342] 347, the court most excellently summarizes the law on this subject: 'By proving the pecuniary circumstances and condition of the grantor, * * * his business, and its risks and contingencies, his liabilities and obligations, absolute and contingent, and his resources and means of meeting and solving his obligations, and showing that he was neither insolvent nor contemplating insolvency, and that an inability to meet his obligations was not and could not reasonably be supposed to have been in the mind of the party, is the only way in which the presumption of fraud, arising from the fact that the conveyance is without a valuable consideration, can be repelled or overcome.' In harmony with this opinion are Sexton v. Wheaton, 8 Wheat. 229 [5 L.Ed. 603]; Kehr v. Smith, 20 Wall. 31 [22 L.Ed. 313]; Jones v. Clifton, 101 U.S. 225 [25 L.Ed. 908], and many other authorities."

However, whether the court was right or wrong in that ruling, the point cannot be availed of here, inasmuch as the defendant elected to introduce evidence and therefore waived any right which she might have to stand upon her contention of insufficiency of proof. McParland-Scanlon Lumber Co. v. J. J. Newman Lumber Co., 5 F.(2d) 949 (C.C.A.5).

It is again contended by counsel for defendant that this suit is being prosecuted under section 67e of the Bankrupt Act (11 U.S.C.A. § 107 (e), while counsel for plaintiff maintains that it is being primarily prosecuted under section 70e (11 U.S.C.A.

§ 110 (e), but evidently with an anchor to windward with the suggestion that section 67e may be of some help to their case. The claim as set forth in the second cause of action is undoubtedly one to set aside a transfer made with the intent to hinder, delay, or defraud creditors, and to recover the amount so transferred. In the light of the contention of counsel for the plaintiff that the suit is primarily based upon section 70e, we shall examine that clause of the Bankrupt Act which reads: "(e) The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value. For the purpose of such recovery any court of bankruptcy as defined in this title, and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

It will be seen that by this provision of the act (1) a trustee may avoid any transfer by a bankrupt of his property which a creditor may have avoided and may recover the property or its value; (2) in order to avoid the statute it is required that the transferee must be a bona fide holder for value of the property or money transferred; and (3) the property transferred or its value may be recovered except from a bona fide holder for value.

Section 70e has been held available to trustees in bankruptcy for the purpose of avoiding transfers made in contravention of state law. In Stellwagen v. Clum, 245 U.S. 605, at page 614, 38 S.Ct. 215, 218, 62 L.Ed. 507, in speaking of this particular section, the Court says: "This section as construed by this court gives the trustee in bankruptcy a right of action to recover property transferred in violation of state law. Security Warehousing Co. v. Hand, 206 U.S. 415, 425, 426, 27 S.Ct. 720, 51 L. Ed. 1117, 11 Ann.Cas. 789; Knapp v. Milwaukee Trust Co., 216 U.S. 545, 548, 557, 30 S.Ct. 412, 54 L.Ed. 610."

It is therefore pertinent to inquire whether or not a creditor of La Fontaine might have avoided the transfer in question, under the state law, and have effected a recovery of the transferred moneys in the event bankruptcy had not ensued. In this connection it may be observed that in Wyoming we have the Uniform Fraudulent Conveyance Act, in which that portion known as section 48-107, W.R.S.1931, reads as follows: "Conveyances made with intent to defraud. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

By this provision it is seen that conveyances as here under consideration must be made with actual intent to hinder, delay, or defraud creditors, as distinguished from intent as presumed in law. Therefore, to sustain the claim of plaintiff under this section, a consideration of the facts in the case is necessary to determine whether or not they are sufficient to show actual intent to hinder, delay, or defraud the creditors of the bankrupt; for, if this avenue was open to a creditor to void the transfer and recover the property or its value, it is, under the bankruptcy section quoted, available to the trustee. While the defendant testified that she was in no sense a creditor of the bankrupt and merely acted as his agent in using his money to pay off the Farthing note and mortgage, the physical facts developed by the testimony can scarcely be reconciled with this assertion. The defendant was a joint maker of the note to Farthing and thereby liable upon it. It was therefore to her advantage to see that this note was paid, else she would be liable upon her obligation. In answer to this contention, it may be said that the security by virtue of the mortgage upon the real estate was more than sufficient to liquidate the indebtedness, so that her liability could be considered at most remotely contingent. But we are again confronted with the situation developed by the evidence that upon this same real estate the defendant had given a warranty deed with covenants against encumbrances, except taxes and paving assessments, and the mortgage still stood as against this property. She was being pressed for a settlement upon the covenants contained in her deed and retained a lawyer to guide her in the premises. It was under these circumstances that the transfer by La Fontaine, the bankrupt, to the defendant, his wife, was made. If the transfer be permitted to stand, the net analysis of the result is that the defendant is not only released from her obli-

gation as maker of the Farthing note, but as warrantor on the O'Neil deed, by which she receives a double benefit to the detriment of the other creditors of the bankrupt. There is no contention that any consideration passed from the defendant to La Fontaine in support of the transfer, nor could there be under the theory and testimony of the defendant herself. In addition, prior to the time of the transfer the defendant knew that the bankrupt was offering through the public press to compromise with his creditors, which clearly indicates his insolvent condition, although section 70e, unlike section 67e, does not require that the bankrupt shall be insolvent, nor that the transfer must have been made within four months prior to the filing of the petition. Stellwagen v. Clum, supra. As a matter of fact, the transfer in question was made on May 7th and the first petition in bankruptcy was filed on May 22, 1931, so that it was but a few days after the transfer that the petition in bankruptcy was filed which later resulted in an adjudication. It would seem that, under a fair analysis of section 48-107, W.R.S., a creditor should have been successful in proving the transaction to be one made with the purpose and intent on the part of La Fontaine to hinder and delay other creditors, giving his wife a preference over them, and that the defendant accepted the transfer as a benefit to herself in securing a release from her obligations to both Farthing and O'Neil, which certainly must take the transaction out of the class of a bona fide holder for value, as no consideration passed from the defendant to the bankrupt. In view of the proofs in this case it must be held that actual intent under the provisions of the state statute to hinder and delay creditors has been sustained and that the defendant intentionally accepted the transfer of funds without consideration for the purpose of benefit to herself in the manner before stated. Proof of intent to hinder or delay creditors is proof of actual fraud. Lovett v. Faircloth (C.C.A.) 10 F.(2d) 301. Furthermore, this situation brings the transaction clearly within the scope and purpose of section 70e, inasmuch as the defendant did not by the transfer become a bona fide holder for value of the property received prior to the date of the adjudication in bankruptcy.

Many pages of the briefs have been taken up by a discussion of section 67e of the Bankrupt Act, and much might be said as to the relationship between that section and section 70e. There is much literature in the books in the comparison of these two sections. In the view which this court takes of the particular transaction here involved, it comes clearly within the purview of section 70e in connection with the state statute condemning fraudulent conveyances, and it would therefore seem unnecessary in this instance to discuss section 67e.

For the reasons stated herein, the motion for judgment by plaintiff will be sustained, and the motion for judgment by defendant will be overruled, reserving exceptions to the defendant, and the court will find generally for the plaintiff in the sum of $4,165 (the amount claimed in the pleadings), with interest from the 7th day of May, 1931, at the statutory rate, which will be computed and added to the principal, with costs to the plaintiff.