In the Matter of the ESTATE of Cleo B.
REED, Deceased.

Joe BUTCHER, Petitioner-Appellant,

v.

Mary BUTCHER, Respondent-Appellee.

No. 4648.

Supreme Court of Wyoming.

June 27, 1977.

David R. Nicholas, Corthell, King, McFadden, Nicholas & Prehoda, Laramie, signed the briefs and appeared in oral argument for petitioner-appellant.

George L. Zimmers, Zimmers, Nelson, Kirkwood & Castor, Laramie, signed the briefs and appeared in oral argument for respondent-appellee.

Before McCLINTOCK, RAPER, THOMAS and ROSE, JJ., and ARMSTRONG, District Judge, Retired.

RAPER, Justice.

John W. Butcher, legatee, renounced the bequest to him under the will of the testatrix following the filing of the executor's final account and petition for distribution. The district court declared the renunciation to be of no force and effect and ordered the executor to proceed as though no renunciation had been filed. From that order, this appeal is taken by Joe Butcher, one of the legatees who would benefit by the renunciation. The sole issue is whether a legatee, under the circumstances of this case may renounce his legacy. We will affirm.

The testatrix, by her will, named John W. Butcher as a legatee. Upon her death, her will started through the course of administration. On March 14, 1975, the final account and petition for distribution was filed showing John W. Butcher, a grandson of decedent, as a legatee to share in the estate. On March 24, 1975, a writ of execution and garnishee notice was served on the executor and John W. Butcher, indicating that Mary K. Butcher, appellee here, had in the Albany County District Court on the 21st day of March, 1975, obtained a judgment against John W. Butcher in the sum of $32,814.92. A copy of the judgment appears in the record. On the same date, the 21st day of March, 1975, John W. Butcher filed the following signed, handwritten renunciation in the estate matter:

"I, John W. Butcher, a beneficiary under the will of Cleo B. Reed, being aware that I am a legatee of a specific beneficial request under said will hereby renounce such bequest. Dated this 21st day of March, 1975."

The trial court ordered paid the bequests allowed under the will to the other legatees and the executor was directed to hold what John W. Butcher would have received. If the renunciation is valid, John W. Butcher's share will pass to others. We need not decide to whom, though Joe Butcher apparently claims an entitlement, not only as a legatee but as one of the heirs as well. There is no transcript, so we do not know what all transpired at a hearing that had been held. The trial judge called for briefs and on December 15, 1975, entered the final

order appealed from.[1] There are no findings of fact or conclusions of law. The effect of the order, if proper, will allow the executor, upon further order of the trial court, to pay John W. Butcher's share to the sheriff, pursuant to the garnishee notice, for eventual application to the judgment in favor of Mary K. Butcher.

 Generally speaking, the right of a testamentary beneficiary to renounce or decline a bequest is recognized and, ordinarily, his motives are immaterial. 80 Am.Jur.2d (Wills) § 1597, pp. 653–654. We are, however, not dealing here with the ordinary situation but one in which the rights of a judgment creditor are adversely affected and badges of fraud apparent. A badge of fraud is a fact tending to throw suspicion upon the questioned transaction, excites distrust as to bona fides, raises an inference that a conveyance is fraudulent and by its presence usually requires a showing of good faith. *Mohar v. McLelland Lumber Company,* 1972, 95 Idaho 38, 501 P.2d 722; *Ebey-McCauley Co. v. Smith,* Okl.1960, 353 P.2d 23; *Evans v. Trude,* 1952, 193 Or. 648, 240 P.2d 940. We find little mention of badges of fraud in Wyoming jurisprudence. In *Quealy Land & Live Stock Co. v. George,* 1927, 36 Wyo. 268, 254 P. 130, a fraud case decided before adoption by the Wyoming legislature of the Uniform Fraudulent Conveyance Act in 1929, this court declared that badges of fraud may always be overcome by evidence of the bona fides of the transaction. That statement is consistent with cases of other jurisdictions here cited.

A case remarkably similar to the one before us is controlling in the disposition of this appeal. *In re Kalt's Estate,* 1940, 16 Cal.2d 807, 108 P.2d 401, 133 A.L.R. 1424. There, the probate court found that the renunciations were filed expressly to defeat the collection of judgments; the attacking creditor appearing at the regular time of hearing prior to final distribution of the estate, objecting to distribution of the renouncing legatee's share to the residuary legatee. Justice Traynor, as we do, acknowledging there is case law to the contrary,[2] nevertheless, went ahead to reason that under the Uniform Fraudulent Conveyance Act in effect in California, a transfer of property to defeat a creditor can be set aside; a renunciation by a legatee is a transfer of property in that it causes title to his share of the estate to pass to another legatee; and is a fraudulent conveyance when done to defeat a creditor.

Wyoming has an affinity to California in this case, making the decision in *Kalt* particularly applicable in two particulars. First, this court has held that since Wyoming's probate code was taken from that state, we are inclined to follow its decisions on the subject, if appropriate to do so. *Merrill v. District Court of Fifth Judicial Dist.,* 1954, 73 Wyo. 58, 272 P.2d 597. Second, Wyoming has the Uniform Fraudulent Conveyance Act, §§ 34–137, et seq., W.S.1957, as does California. Both the probate code and the Uniform Fraudulent Conveyance Act were the bases used by the California court in its disposition.

 Joe Butcher attempts to distinguish the case before us from *Kalt* on the ground that in the latter case, the renunciating legatee admitted the renunciation was for the purpose of defeating creditors. We have no idea whether John W. Butcher

1. The order appealed from is as follows:
"THE MATTER of the execution and garnishment heretofore served upon Halvor Johnson, executor of the above-named estate having come on to be heard and the various parties in interest having been present in Court or represented by counsel and the Court having heard argument and having received briefs on the law relevant to such matter and the Court being fully advised in the premises finds:
"That the attempt at renunciation filed herein by John Wayne Butcher on March 21, 1975 is of no force or effect the same as if it had never been filed herein.
"NOW THEREFORE IT IS HEREBY ORDERED:
"That the Executor in the above-entitled matter proceed in this estate in the same manner as if the purported renunciation by John Wayne Butcher had never been filed herein."

2. See Annotation, 133 A.L.R. 1428, supplementing Annotation, 27 A.L.R. 472 and 80 Am. Jur.2d (Wills) § 1598, pp. 654–655.

admitted or denied anything because we have no transcript of any testimony. All that appears in the record is what we have related. We cannot consider any matter upon which the record is silent. *McCarthy v. Croker,* Wyo.1976, 549 P.2d 323; *Mulhern v. Mahs,* 1930, 41 Wyo. 214, 284 P. 123. We can only decide a case upon what appears in the record before us. *Thomas v. Gonzelas,* 1958, 79 Wyo. 111, 331 P.2d 832. In the absence of findings of fact, a judgment will be affirmed on any legal ground appearing in the record. *Peters Grazing Association v. Legerski,* Wyo.1976, 544 P.2d 449, reh. den. 546 P.2d 189.

■ Section 34–144, W.S.1957, of the Uniform Fraudulent Conveyance Act, provides:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Note the alternative language of § 34–144, "actual intent, * * * to hinder, delay, *or* defraud either present or future creditors, *is* fraudulent." (Emphasis added.) *Hofmann v. LaFontaine,* U.S.D.C.Wyo.1936, 16 F.Supp. 748, is the nearest we can come to a Wyoming case construing that section. There, it was held that proof of intent to hinder or delay creditors is actual fraud, citing *Lovett v. Faircloth,* 5 Cir. 1925, 10 F.2d 301, cert. den. *Faircloth v. Lovett,* 270 U.S. 659, 46 S.Ct. 355, 70 L.Ed. 785. Such intent becomes real fraud by operation of the statute. The rule of *Hofmann* does represent the law. An intent to "hinder or delay" is sufficient to void a transfer even though there is no actual fraud as contemplated following the disjunctive "or." *Rose v. Rose,* 1934, 241 App.Div. 3, 271 N.Y.S. 5. Proof of actual fraud, as provided in the alternative, was therefore not necessary.

■ There exists here a strong indicia or badge of fraud in the fact that on the same date Mary K. Butcher obtained a judgment against John W. Butcher, he filed a renunciation in the estate matter. A transfer of property, without consideration, in the face of a threat or pendency of litigation, is a badge of fraud. *Royal Indemnity Company v. McClendon,* 1958, 64 N.M. 46, 323 P.2d 1090. Joe Butcher presented no evidence that the transfer was for a consideration. A hurried transaction not in the usual mode of doing business is considered a badge of fraud. *United States v. Leggett,* 6 Cir. 1961, 292 F.2d 423, cert. den. 368 U.S. 914, 82 S.Ct. 194, 7 L.Ed.2d 131, reh. den. 368 U.S. 979, 82 S.Ct. 476, 7 L.Ed.2d 441. Another badge of fraud is that the will was admitted to probate on October 23, 1974, following actual notice to John W. Butcher that such action would be taken; it was not until on March 21, 1975, after the final account and petition for distribution had been filed, that he filed his renunciation. *In re Kalt's Estate,* supra, lists long delay before renouncing as a consideration. "Long delay" is relative, of course, but here the renunciation was not filed until four days prior to the date fixed for final settlement; and, when coupled with the date of the judgment against him, it is reasonable to infer that it was filed with intent to defeat his judgment creditor. The relationship between the parties to an alleged fraudulent conveyance is a circumstance to consider with the rest of the evidence to determine intent. *Godina v. Oswald,* 1965, 206 Pa.Super. 51, 211 A.2d 91. Here, the legatees, who are also the only surviving heirs to benefit by the renunciation, were all grandchildren, as was John W. Butcher, or great-grandchildren of the same grandparents or great-grandparents, as the case may be. In any event, the renounced legacy would pass to relatives. We need not decide, however, just exactly how the renounced share would have gone because the judgment creditor in this case will be the recipient. A single badge of fraud may stamp a transaction as fraudulent. *Payne v. Gilmore,* Okl.1963, 382 P.2d 140. See 7 ULA, Master Edition, p. 423, annotating the Uniform Fraudulent Conveyance Act.

■ The question of whether the renunciation was filed to hinder or delay creditors involves the element of intent. Since

it is impractical to look into a person's mind to ascertain his intention, it is necessary to consider surrounding circumstances. Since it is most difficult to prove intent by direct evidence, circumstantial evidence is necessary. The issue of actual fraud is commonly determined by recognized indicia, demonstrated badges of fraud, which are circumstances so frequently attending fraud; a concurrence of several will make out a strong case and be the circumstantial evidence sufficient to sustain a court's finding. *United States v. Leggett,* supra. See also *United States v. Bertie,* 9 Cir. 1976, 529 F.2d 506, and *Gafco, Inc. v. H.D.S. Mercantile Corp.,* 1965, 47 Misc.2d 661, 263 N.Y. S.2d 109. The badges of fraud in the case before us constitute the circumstances to establish actual intent to hinder and delay a creditor. The only way of determining actual intent to hinder and delay creditors is by a consideration of the circumstances surrounding the transaction. *Brydges v. Emmendorfer,* 1945, 311 Mich. 274, 18 N.W.2d 822. It is not necessary to prove a fraudulent conveyance by direct evidence, circumstantial evidence being sufficient. *Kenneth E. Curran, Inc. v. Salvucci,* 1 Cir. 1970, 426 F.2d 920.

Under the early common law of the Wyoming Territory and State, conveyances without consideration carried with them a rebuttable presumption of fraud against existing creditors. The burden was upon the grantee to show facts and circumstances which would tend to rebut the presumption. *First National Bank of Cheyenne v. Swan,* 1890, 3 Wyo. 356, 23 P. 743.[3] The same rule applies where badges of fraud are established to prove actual intent; the burden of going forward with evidence of valuable consideration is on the party seeking to uphold the conveyance as against the claim of an attacking creditor. 37 C.J.S. (Fraudulent Conveyances) § 388 pp. 1225–1226. Joe Butcher made no attempt to rebut the evidence of actual intent. He has left the record silent as to the burden cast upon him.

We therefore conclude that all of the badges of fraud, present here, joined with the circumstance of the record's failure to explain any good faith and show consideration, establishes an actual intent to hinder and delay the judgment creditor, the appellee. By that determination, we must therefore conclude that the transfer by renunciation was a fraudulent conveyance as a matter of law under § 34–144.

We have no problem with the jurisdiction of the Campbell County district court to settle this matter. Section 2–3, W.S.1957, provides as follows:

"The district courts of the state shall have exclusive original jurisdiction of all matters relating to the probate and contest of wills and testaments, the granting of letters testamentary and of administration, and the settlement and distribution of decedents' estates. The court granting the letters shall have exclusive jurisdiction of all matters touching the settlement and distribution of the estates whereon such letters have been granted."

Affirmed.

McCLINTOCK, Justice, dissenting, with whom ROSE, Justice, joins.

The majority concede that "[g]enerally speaking, the right of a testamentary beneficiary to renounce or decline a bequest is recognized and, ordinarily, his motives are immaterial," but treat the renunciation as a conveyance and conclude "that all of the badges of fraud, present here, joined with the circumstance of the record's failure to explain any good faith and show consideration, establishes an actual intent to hinder and delay the judgment creditor, the appellee. By that determination, we must therefore conclude that the transfer by renunciation was a fraudulent conveyance as a matter of law under § 34–144 [W.S.1957]."

In reaching this conclusion the majority rely strongly on *In re Kalt's Estate,* 16 Cal.2d 807, 108 P.2d 401, 133 A.L.R. 1424 (1940), cited as having a special affinity

---

3. See also *Wyoming Stockmen's Loan Co. v. Johnston,* 1925, 33 Wyo. 457, 470, 240 P. 449, 453, and *Platte County State Bank v. Frantz,* 1925, 33 Wyo. 326, 342, 239 P. 531.

with Wyoming law because we have adopted the California probate law and both states have the uniform fraudulent conveyance act. Actually, the statute referred to in *Kalt*, § 3439, California Civil Code, was repealed as part of the legislative act adopting the uniform act, Ch. 329, Statutes of California, 1939. As pointed out in *Kalt*, 108 P.2d at 402, repealed § 3439 voided all transfers made "with intent to hinder, delay or defraud a creditor." The uniform acts of both California and Wyoming condemn alternative types of transfers, one of which is a transfer "by a person who is or will be thereby rendered insolvent * * * *without regard to his actual intent if the conveyance is made without * * * consideration*," § 34–141, W.S.1957, and the other of which is a conveyance made "with *actual intent*, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, * * *." § 34–144. (Emphasis added)

I cannot help but feel that there were important reasons for the provisions which I have italicized. Several important questions then occur: Was the renunciation without consideration? Was Butcher insolvent or rendered so by the conveyance? If there was consideration or if he was not thereby rendered insolvent, was there an *actual* intent to hinder, delay or defraud creditors? These questions must be answered before we can ignore the fundamental principle that a beneficiary may renounce without regard to his motives. It would seem to me that they should be determined on the basis of concrete evidence, not mere conjecture drawn by the majority from a record that is as factually inadequate as any I have ever seen.

The majority find what they term the necessary "badges of fraud" in these facts: (1) the transaction was hurried, that is, the renunciation was filed in the Campbell County probate proceeding on the same day that a judgment had apparently been obtained by Mary Butcher against her husband in the district court of Albany County, Wyoming and on which execution had issued; (2) there had been a long delay in filing the renunciation, that is, the will had

been admitted to probate on October 22, 1974 and the renunciation was filed March 21, 1975, seven days after the final account and petition for distribution had been filed with the probate court and four days before the date fixed for final settlement. This delay, "coupled with the date of the judgment against him" in the opinion of the majority renders it "reasonable to infer that it [the renunciation] was filed with intent to defeat his judgment creditor."

Although my objection to the order of the probate court is based on jurisdictional grounds, I must indicate my great concern when I read these statements in the majority opinion that "[w]e cannot consider any matter upon which the record is silent"; that "[w]e can only decide a case upon what appears in the record before us"; and that "[i]n the absence of findings of fact, a judgment will be affirmed on any legal ground appearing in the record." My concern is not with the accuracy of the propositions set forth but in their application to this case. The certified record contains the usual final account and petition for distribution, shortly followed by a handwritten, unverified and unacknowledged renunciation showing a signature, "John W. Butcher." The executor then filed his supplement to the final account and petition for distribution in which he recites that Butcher has filed a renunciation and the "Executor believes that a separate hearing should be had *to determine the disposition of John Wayne Butcher's interest in the Estate.*" (Emphasis added) An order setting a hearing on May 14, 1975 to determine the disposition of Butcher's interest "where any interested party may be heard or may submit argument in brief" and providing for service personally or by mail "on all interested parties" was thereupon entered. Service was apparently made by ordinary mail.

On May 14, 1975, the executor and his attorneys appeared; Mrs. Butcher, the so-called judgment creditor, appeared in person and with her attorney; a memorandum was separately filed in behalf of John W. Butcher, the renouncing beneficiary; and Joe Butcher, one of the other beneficiaries

who would probably benefit by the renunciation, appeared by his attorney. No record was made of what transpired except an order of the probate court entered that day recites the filing of Butcher's brief and appearances by the other parties "and now the Court having heard the parties," finds that briefs should be filed but that partial distribution can be made of portions not involved in the renunciation. The parties were to file briefs on undesignated questions within a fixed time.

Although I cannot say with any conviction that they constitute a part of a proper record as required by our rules, the record does contain several briefs and attached to the brief of Mary Butcher, appearing as a judgment creditor of John W. Butcher, are a certified copy of a judgment entered against John W. Butcher in the district court of Albany County, Wyoming on March 21, 1975, and a similarly certified copy of a writ of execution directed to the sheriff of Campbell County issued out of the Albany County court on March 21, 1975, with the return of that sheriff endorsed thereon, filed in the issuing court on March 27, 1975. There is also attached a certified copy of a garnishee notice apparently signed by the clerk of the Albany County court on March 21, 1975, addressed to Bill Johnson, Trustee of the Estate of C. W. Reed, and Executor of the Estate of Cleo Reed, Garnishee, which directs the latter to appear before the Albany County court on April 10, 1975 at 9:00 a. m. and "answer under oath all questions that then and there may be put to you touching the property of every description and the credits of John W. Butcher * * * in your possession or under your control * * *." The relation of this instrument to the writ of execution is not shown, nor does it appear whether any such answer was filed in that court by the executor. In order dated December 12

and entered December 15, 1975 the probate court recites that "THE MATTER of the execution and garnishment heretofore served upon Halvor Johnson, executor," had come on to be heard (date undisclosed) with parties present in court or represented by counsel "and the Court *having heard argument and having received briefs* on the law relevant to such matter" (emphasis added) finds that the attempt at renunciation filed by John Wayne Butcher on March 21, 1975 "is of no force or effect the same as if it had never been filed herein" and the executor is ordered to proceed in the estate "in the same manner as if the purported renunciation by John Wayne Butcher had never been filed herein."

I cannot help but think that consideration, solvency and intent are all important matters that must be carefully considered by any court before a transfer is characterized as fraudulent and that those questions should be answered by a court of competent jurisdiction only after a careful and complete evidentiary hearing. There is nothing in the record before us to disclose that John Butcher is not entirely capable of responding to the judgment against him. There is nothing to show that the renunciation may not have been based upon adequate consideration. But without a pleading raising any question of fraudulent transfer, without issuance and service of proper process upon those who are accused of having participated in such fraudulent transfer, without an evidentiary hearing on the questions,[1] and without any pertinent findings by the judge of the probate court who heard argument in the matter, a majority of this court conclude as a matter of law that the renunciation amounted to a fraudulent conveyance and was therefore void. I find it impossible to accept such a procedure as constituting due process of law.[2]

---

1. I think that I am justified in concluding that no evidentiary hearing was ever held in the probate court because this recitation by the court, as well as the omission of any reference to an evidentiary hearing in the order entered May 14, 1975, would certainly not seem to be the result of oversight.

2. A disquieting question which is perhaps outside the scope of the present appeal and which was not raised by either party has occurred to me as to the efficacy of the execution to reach any interest of Butcher in the estate. In *In re Estate of Brennan*, 433 P.2d 512, 516 (Wyo. 1967), the last Wyoming decision which I found referring to the rule laid down in *Church* as to

More importantly, I consider that everything that was done by the probate court with respect to the renunciation was without subject-matter jurisdiction and therefore void. The majority brush aside the jurisdictional arguments of Joe Butcher, one of the beneficiaries of the estate who would be benefited by the renunciation, by reference to § 2–3, W.S.1957, which section gives to the district courts exclusive jurisdiction of various aspects of probate, including those "touching the settlement and distribution of the estates whereon such letters have been granted." Nothing is said in this statute about the jurisdiction of the district court to determine the validity of a conveyance alleged to have been fraudulently executed, which matters historically have been disposed of by courts of plenary jurisdiction exercising equitable powers. The majority ignore *Church v. Quiner*, 31 Wyo. 222, 224 P. 1073 (1924), cited by Joe Butcher in support of his claim of lack of jurisdiction. No reference is made by them to later cases of this court fully indicating that the rule set forth in *Church* is still the law of this state. Under these Wyoming authorities I think that the jurisdiction of the district courts, sitting as probate courts, is materially limited, and that it is the established law of this state that any act of such a court outside the jurisdiction specifically conferred by the legislature is void.

In *Church*, one of the beneficiaries of the estate had made two conflicting assignments of his interest as such beneficiary. The executor paid out funds of the estate to one of the assignees and in his final account asked credit therefor. Another assignee filed objections to the claim, asserting priority of her assignment. Evidence was submitted by both parties at what seems to have been a full hearing, except that the assignee who had been paid did not appear. Upon appeal it was ordered that the district (probate) court strike any finding concerning the validity of the assignments and substitute therefor a "finding that the court has no jurisdiction to determine that question." In arriving at this conclusion, which I take to be purely a ruling upon the jurisdictional aspects of the proceeding, our court had this to say:

"* * * Where, as in Wyoming, the same court that has jurisdiction in probate has also general jurisdiction, the separation of its powers exercised in probate from those exercised in actions at law or in equity might at first seem the result of a merely technical rule of no practical importance; but when it is borne in mind that the court in probate having jurisdiction of the estate can for many purposes acquire jurisdiction of the persons interested in the estate without any actual notice to them, the substantial nature of the distinction, as well as the importance of maintaining it in practice, becomes clear. We deem it unnecessary to refer to other reasons for confining the probate jurisdiction to 'matters of probate,' as defined by law.

"It is laid down as a general principle that probate courts have no power to investigate the validity of an assignment of an interest of an heir or legatee unless that power be expressly conferred by statute. Woerner on Administration (3d

---

the division between general and probate jurisdiction in the district courts, it is said:

"* * * It should perhaps be noted that in the absence of the statute so providing, a legacy or a distributive share is not ordinarily subject to attachment or garnishment in the hands of an administrator until after the decree of distribution, the attaching creditor taking only such rights or interest as his debtor has at the time of the service of the writ of attachment. * * *"

Even though the statement was perhaps not necessary to the decision therein reached, it does appear to be a proper statement of law. *In re Troy's Estate*, 1 Cal.App.2d 732, 37 P.2d 471 (1934); see *In re Bennett's Estate*, 13

Cal.2d 354, 90 P.2d 84, 89, 126 A.L.R. 771 (1939); *Hustad v. Reed*, 133 Mont. 211, 321 P.2d 1083 (1958). I think that the executor in this case should have responded to the writ of execution and notice of garnishment in the district court of Albany County, setting forth the facts concerning the estate and would thereby be absolved of any liability and the garnishment dissolved. The judgment creditor could then proceed by independent suit against the executor, the beneficiaries of the estate and John Butcher, to determine whether the renunciation was in fact and in law a fraudulent conveyance.

Ed.) §§ 151, 563. We think our statutes, when examined with a proper regard for the decisions in California and in other states, which like Wyoming, have adopted in substance the California Probate Code, do not mean that questions of priority of conflicting assignments by a legatee shall be matters of probate." 224 P. at 1074.

Mr. Justice Kimball went on to discuss the state of the California law as of the time that Wyoming had adopted provisions of that state's probate code as our law. He refers to the fact that

" * * * [i]n 1891, when Wyoming adopted the Probate Code, the last expression of the California Supreme Court on this subject was the case of *Chever v. Ching Hong Poy*, 82 Cal. 68, 22 Pac. 1081, decided in 1889, where it was said that the decree of distribution has nothing to do with contracts or conveyances which may be made by heirs, devisees, or legatees of or about their shares of the estate * * *." 224 P. at 1075.

He also refers to the later case of *Martinovich v. Marsicano*, 137 Cal. 354, 70 P. 459, in which it was indicated that " 'matters of probate' do not include the determination of conflicting claims to the estate of an heir or devisee, or whether he has conveyed or assigned his share of the estate." 31 Wyo. at 230, 224 P. at 1075, and to *In re Howe's Estate*, 161 Cal. 152, 118 P. 515 (1911), holding

" * * * that whenever the fact of a conveyance from an heir, devisee, or legatee is in dispute, or where its validity or effect is an issue upon the distribution of the estate, the determination of that issue is not a matter within the probate jurisdiction of the court. * * * " 224 P. at 1075.[3]

Cases from other states are cited to the same effect.

One may wonder why under this state of the law it was possible for the Supreme Court of California in *Kalt* to affirm the action of the probate court. The question of jurisdiction was not raised therein and the important question of the renouncing beneficiary's intention was settled by a frank admission that the renunciation was for no other purpose except to prevent satisfaction of the creditor's claim. However, and although I have not made an extensive investigation, it does appear that California has by specific legislation enlarged the jurisdiction of the probate court as such. At the time of *Kalt*, 1940, Ch. 588, Statutes of California, 1939 provided that conveyances or assignments of an interest in an estate should be in writing, acknowledged and filed with the office of the clerk of the court issuing the letters testamentary or of administration "and shall be subject to approval or disapproval by the court as herein provided." Only upon such approval could the conveyance be recorded in the office of the county clerk. It was further provided that the court should have power to determine the validity of such instruments and that they should be unenforceable until filing as required. Section 2 of the same act permitted any party to the instrument to file a petition in the probate court seeking determination of the validity of such an instrument.

Section 1020.1 of the California Probate Code (54 West's Annotated California Codes, 1956 Ed.), which was apparently enacted as part of Ch. 1162, Statutes of California, 1941 specifically gives to the probate court a broad jurisdiction, before making distribution to any assignee or transferee or any person other than an heir, devisee or legatee pursuant to any agreement or request, to inquire into the consideration for and circumstances surrounding such a transfer and "if it finds fraud, duress or undue influence involved it may refuse to make distribution pursuant thereto except upon such terms as it deems just and equitable." Such action is to be taken only after hearing upon notice to the interested beneficiaries of the estate and the transferee.

---

3. My quotation is from *Church*, supra, being this court's summary of the holding in *Howe*, supra.

We thus see that both at the time of *Kalt* and at the present time there was and now is a considerable difference between the California and Wyoming statutes as to the powers of the probate court concerning conveyance of estate interests. Whatever may be the situation in California, I am convinced that this court has consistently adhered to the principles announced in *Church*. Thus in *Poston v. Delfelder*, 39 Wyo. 163, 175, 270 P. 1068, 1071 (1928) it was said that in *Church* "we said that acts of the probate court without jurisdiction of the subject-matter have no binding effect 'even on those who invoked its authority.'" In *Denver Joint Stock Land Bank of Denver v. Preston*, 52 Wyo. 132, 140, 70 P.2d 584, 587 (1937) it is stated, citing *Church*, that "[w]hile the judge of the district court is also judge of the probate court, nevertheless there is a distinction between those courts." In *In re Stringer's Estate*, 80 Wyo. 389, 343 P.2d 508, on application for rehearing, 80 Wyo. 426, 433, 345 P.2d 786, 789 (1959), with specific reference to § 2–3, W.S.1957 (the only statute cited by the majority on the question of jurisdiction), it was said:

"But this statute does not, in our opinion, change the fact that in proceedings for the probate of an instrument as the last will and testament of the deceased only matters affecting the validity and subsistence of the will should be considered, and any right or claim against the estate arising through contract must be asserted in an independent action against the administrator or the executor of the estate as the case may be."

Reference is made to *Church* as holding that conflicting claims as to who was entitled to receive distribution "could not be determined in the probate proceeding but must be litigated as a civil matter."

The distinction between the exercise by the district court of its general powers vis-à-vis the exercise of its probate powers was recognized in *Gaunt v. Kansas University Endowment Association of Lawrence, Kansas*, 379 P.2d 825, 827 (Wyo.1963), to the extent that a proceeding to contest the will, filed on the general side of the court, barely within six months of the time allowed for filing such contest, and which contest the court held should have been filed in the probate side of the court, was dismissed for want of jurisdiction and the order affirmed. This dismissal effectively ruled out any chance of contesting the will.

*Church* is also cited in *State ex rel. Sheehan v. District Court of the Fourth Judicial District*, 426 P.2d 431, 436 (Wyo.1967) as concluding,

" * * * after a thorough consideration of the matter, that the probate jurisdiction of a district court does not include power to determine the priority of conflicting assignments of an interest in an estate."

For the reasons stated I am convinced that the district court of Campbell County, sitting as a probate court, was without jurisdiction of the subject matter of the validity of the renunciation. Since as further stated in *Church*, 31 Wyo. at 232, 224 P. at 1075, "[j]urisdiction of the subject-matter cannot be conferred by consent," and since as said in *Tobin v. Pursel*, 539 P.2d 361, 363, n.2 (Wyo.1975), referring to earlier decisions of this court, "it is not only within the power of this court, but the duty of the court, to notice and act upon jurisdictional matters even though not raised by the parties or the court below," the fact that Joe Butcher raised the jurisdictional question only casually in the probate court and attempted to secure a favorable ruling upon the renunciation is of no consequence. Therefore, anything that we say here as to merits of the California rule as against the Iowa rule is likewise outside our jurisdiction. I am therefore of the opinion that an order should be entered herein as was done in *Church*, reversing the action of the probate court and remanding the matter with direction to dismiss the application of the executor for want of jurisdiction to determine the question attempted to be raised by him through his supplemental application.