[L. A. No. 16454. In Bank.—April 26, 1939.]

In the Matter of the Estate of WILL WALLACE BEN-
NETT, Deceased. ALFRED SIEMON, as Executor,
etc., Appellant, v. MORTGAGE INVESTMENT COM-
PANY OF LOS ANGELES (a Corporation), Respond-
ent.

Siemon & Claflin, Alfred Siemon, T. R. Claflin and Bennett Siemon for Appellant.

Earle M. Daniels and Burdette J. Daniels for Respondent.

CURTIS, J.—This is an appeal by the executor of the last will and testament of W. W. Bennett, deceased, from the order settling the final account of the executor and final decree of distribution in said estate.

In the will of the deceased, a number of special bequests were made, and the residue of the estate was given to his two daughters, Inez B. Siemon and Edna B. Allen. The executor qualified on February 8, 1934. An inventory was filed showing the value of the estate to be slightly less than $10,000. The first publication of notice to creditors was on February 14, 1934. The time for presentation of claims expired on August 14, 1934. Three claims were presented against the estate which were allowed and paid by the executor. The special bequests were paid in full. The executor then paid on September 1, 1934, to the two residuary legatees, Inez B. Siemon and Edna B. Allen, the sum of $1,075. All of these payments were made by the executor without any order of court and before the filing of any account of his administration, and before the filing of his petition for distribution.

On September 26, 1934, the respondent herein, the Mortgage Investment Company, having theretofore recovered a deficiency judgment against the said Edna B. Allen, purported to garnishee the money due the said Edna B. Allen from said estate. For that purpose respondent had issued a writ of execution on said deficiency judgment to the sheriff of Kern County, the county of which said executor was a resident, and said sheriff on September 26, 1934, served a copy of said writ of execution, together with a notice that the interest of said Edna B. Allen, in said estate, was attached. A writ of execution on said deficiency judgment was also issued to the sheriff of the county of Los Angeles, and the sheriff of said county of Los Angeles on the 27th day of September, 1934, served a copy of said writ of execution upon the clerk of the Superior Court of the County of Los Angeles, together with a notice to said clerk that the interest of Edna B. Allen in the personal property of the estate of said deceased was attached.

Subsequently said executor filed his final account and petition for distribution. In said account and petition he set forth the payment of the sum of $1,075 to each of the two residuary legatees, the said Inez B. Siemon and Edna B. Allen. The respondent, the Mortgage Investment Company, filed its objection to said account and petition for distribution in which it set forth that it had recovered said judgment against Edna B. Allen, the issuance of said writs of execution

and the service of the same upon the executor and the clerk of the Superior Court of the County of Los Angeles. Objection therein was made to the item of $1,075 paid to Edna B. Allen, and also to the item of $350, which was listed in the account as paid to the surviving widow of said deceased, on account of her family allowance, the objection being that the sum of $350 exceeded the amount legally due on the family allowance in the sum of $110. No objection was made to the item of $1,075 paid to Inez B. Siemon.

The final account and petition for distribution, together with said objection thereto, came on for hearing. Evidence was introduced and the matter was submitted for decision. The court made findings of fact in which it found, among other facts, that the residuary legatees, Inez B. Siemon and Edna B. Allen, had each been paid the sum of $1,075 on or about September 1, 1934, and the sum of $274.83 subsequently thereto, and as to these payments, amounting to the sum of $1349.83 paid to each of said residuary legatees, "the court further finds that all of said payments paid to said residuary legatees were made without any order of court as provided in section 1010 of the Probate Code of the state of California and were illegal and void, and that said executor exceeded his powers and authority in making said payments, and said payments constitute a ratable distribution and that said payments were not reasonable payments to be made by said executor without obtaining order of court". The court found in favor of the respondent as to its claim that the amount due Edna B. Allen had been legally garnisheed by the proceedings in execution taken under the deficiency judgment in favor of respondent and against said Edna B. Allen. It also found that the payments on account of the family allowance had exceeded the legal amount due thereon in the sum of $110. Upon these findings of fact, following the conclusions of law made by the court, it was ordered that the executor pay to each of said residuary legatees, Inez B. Siemon and Edna B. Allen, the sum of $1349.83, and that "said executor deliver the share of Edna B. Allen, residuary legatee in said estate, in the sum of $1349.83 to the sheriff of the County of Los Angeles, State of California, in accordance with law and subject to the rights of the parties". In its order approving said final account the court allowed the sum of $240 only on

the family allowance, thereby reducing the amount set forth in the final account by the sum of $110.

From this order settling the final account and the decree of final distribution the executor has appealed. The order settling the final account and the decree of distribution is in one instrument or document entitled, "Order and Decree of Settlement of Account and Final Distribution".

It is the contention of the appellant that the probate court erred in refusing the executor credit for advancements made to residuary legatees upon the hearing of the final account and petition for distribution where all claims and expenses of administration had been paid in full and the estate had been fully administered and was ready for final distribution. This contention we think must be sustained. The question as to the duty of the probate court upon the final distribution of the estate to give credit to the executor on account of advancements prior to final distribution has frequently been before the appellate courts of this state, and so far as our research has extended, has been without an exception decided in accordance with the contentions of the appellant as set forth above.

In *In re Moore,* 96 Cal. 522 [31 Pac. 584], the administrator of the estate advanced to the widow of the deceased the sum of $6,000. The probate court upon final distribution charged the administrator with this sum, together with interest thereon from the time of said advancement, and allowed the administrator to retain the widow's distributive share of any moneys of this estate as part payment thereof, but denied the administrator any lien on the property of the widow remaining in the hands of the administrator to secure payment of money advanced to her in excess of the actual amount of money coming into his hands and due the widow. Both the widow and the administrator appealed from said decree of distribution. The appeal of the widow was denied, the court holding (p. 528) : "She has retained the money, and upon the most obvious principles of justice, this fact must be taken into account in the final distribution of the estate. In settling the accounts of the administrator, and in ascertaining the distributive shares of those entitled to succeed to the estate of a deceased person, and in adjudging what shall satisfy the decree of distribution, the superior court, in the exercise of its

probate jurisdiction, proceeds upon principles of equity, and may so frame its judgments as to do exact justice in regard to all matters properly entering into the account of the administrator, and which, in the application of equitable rules affect the distributive shares of the estate.'' On the appeal of the administrator the decree of distribution was reversed. In reversing the judgment the court held (p. 530) : ''The superior court, as we have seen, held that the amount of money distributed to the widow might be applied by the administrator upon the amount found by the court to be due him on account of the advances made by him, but as to the balance due after applying this money in his hands, the court held it had no power to give him any relief. We think that in so holding the court was in error. The administrator was entitled to a decree that the amount advanced by him to the widow was a charge against her entire distributive share of the estate, whether the same consisted of money or real estate, or both; if her share of the money of said estate distributed was not sufficient to pay such advances, the court should have made the distribution of her share of the real estate as subject to the payment of the amount found to be due from her to the administrator by the decree. The court had the right to so decree, as incident to its general power to state the account between the parties in accordance with justice and equity, and in the settlement of which account, on such a basis, the court must necessarily ascertain what the widow has already received from the administrator on account of her distributive share of the estate.''

In the *Estate of Kennedy*, 120 Cal. 458 [52 Pac. 820], an appeal was taken from an order surcharging the final account of the executor with the sum of $4,500. The facts of this case are much involved and it is not necessary to set them forth in order to understand the final conclusion of the court modifying the order settling said final account. This conclusion was stated as follows: ''Therefore, against the sum of $4,500 surcharged, the executor should be allowed credit of $2,250 paid as an advance to Frederick E. Kennedy and chargeable against his distributive portion of the estate.''

In the *Estate of Mitchell*, 121 Cal. 391 [53 Pac. 810], the decree for partial distribution was reversed. In that estate the executor advanced to certain legatees sums of money dur-

ing the administration of the estate for which the probate court refused to give him credit as against the amounts due said legatees. The court was of the view that the order of the probate court in certain particulars was "quite indefinite". But, said the court (p. 395) : "Waiving this question, however, and the fact remains that there was positive error in ordering the whole of the legacies paid, as shown by the will, without deducting therefrom the sums of eleven hundred and sixty-six dollars and thirty-three and two-thirds cents paid to each of the legatees, after the original hearing and before the final hearing, and which payments were admitted on such final hearing to have been received by petitioners."

It will be noted that in each of the cases cited above the order or decree of the probate court in which the executor or administrator was refused credit for advancements made to legatees was reversed by this court. It cannot be argued therefore that it is discretionary with the probate court to credit said executor or administrator with the sums advanced to legatees. On the other hand, the only reasonable construction to be placed upon these decisions is that it is mandatory upon the probate court to credit the executor or administrator with the amount thus advanced to legatees when no rights of third parties have intervened.

The principal contention of respondent is that the act of the executor in making said advancements without previous authorization by the probate court as required by section 1010 of the Probate Code was unlawful and constitutes an attempt to entrench upon the exclusive jurisdiction of the probate court and was an infringement upon the rights of all persons interested in the estate. This contention of the respondent flies in the face of the three decisions of this court hereinbefore cited, and is not supported by any authority to which our attention has been called. The principal authority relied upon by the respondent is the case of *Estate of Willey*, 140 Cal. 238 [73 Pac. 998]. The appeal in that case was from an order settling the final account of executors. It did not in any manner involve the decree of distribution. Advances had been made to certain devisees for which the executors sought to have credit in their final account. The probate court refused to allow credit for such advancements and in

affirming the order of disallowance this court made it plain that the only matter before the probate court was the final account, and that the claim that credit should be allowed the executors for such advancements could not be considered on the hearing of the final account, but was a proper subject for consideration and determination on the hearing of the petition for final distribution. This is made apparent from the following language of the opinion on page 242: "It must be apparent that, as these matters, which may so radically affect the right of the beneficiaries under any will, can only be legally and effectively determined upon distribution, any effort to have them determined in settling an account must in the nature of things be out of place. We are satisfied that the only items which are properly to be settled in an executor's account are items relating purely to his administration of the estate—charges of administration and payments of debts of the decedent. We do not mean to hold that the executor is not entitled to be reimbursed for payments which he may make under the terms of the will, nor to be credited with distributive shares which he may have turned over. We simply hold that credits therefor are not to be given upon the settlement of accounts, but are to be retired therefrom and considered upon the distribution of the estate. And we understand this to be the law as laid down by this court. (*Estate of Rose,* 80 Cal. 166, 179 [22 Pac. 86].) Upon the hearing for distribution the court, in harmony with its general equitable powers, can adjust all matters between the legatees or distributees and the executors, and credit the latter against the estate distributed to the former for all advances which may have been made to either of them under the terms of the will."

This language is particularly pertinent to the appeal in the instant case. As before noted, the appeal is from the "Order and Decree of Settlement of Account and Final Distribution". While the final account and petition for distribution were filed separately and at different times the two matters were consolidated and heard together, and but one set of findings and one decree was made by the court in its final determination of the two matters before it. Both in the final account and in the petition for distribution the executor asked to be credited for the amounts paid to the two residu-

ary devisees. ▉ Conceding that it was improper to allow credit on account of the money advanced to these distributees in the hearing of the final account, it was perfectly proper to consider and allow credits for said advancements on the petition for distribution. It was so held not only in the authorities cited by the appellant but also by the decision in the *Estate of Willey, supra,* relied upon by the respondent.

Respondent also relies upon certain language found in the *Estate of Guglielmi,* 138 Cal. App. 80 [31 Pac. (2d) 1078]. This case, like the case of *Estate of Willey, supra,* instead of supporting the position of respondent, is an authority expressly in favor of the appellant. In that case the probate court refused to allow the executor credit for advances made to three beneficiaries named in the will of the deceased. This order of the probate court was reversed and it may be stated here that the *Estate of Guglielmi, supra,* is another definite authority against the contention of the respondent that it is discretionary with the probate court to allow or disallow credits for advancements made to heirs or beneficiaries in the final distribution of the estate. In the Guglielmi case, as in others cited herein, the court, as we have seen, reversed the probate court for its failure to allow credit for advancements, not that the court abused its discretion, but that it committed prejudicial error in disallowing credit to the executor for advancements made to an heir or beneficiary.

That the case of *Estate of Guglielmi, supra,* supports the contention of appellant that credits should have been allowed for advancements made by him to the two residuary legatees clearly appears from the following statement in the opinion in said case (p. 92) : ''Manifestly, if these three beneficiaries were entitled to the net income derived from the management of the estate as a whole and if the advances made to them by the appellant were from that net income alone he should not be charged to account to the estate in full for those advances or for interest as if he had defaulted or misapplied the funds to his own use. On the other hand, if, upon final distribution, it be found that the nephew is dead and that the brother and sister are then entitled under the will to the entire residue, then the amounts advanced to them by the appellant may be held to have been advanced on account of their credit accordingly.''

Other authorities from this and jurisdictions out of the state might be cited, but we think those cited are sufficient to show that the probate court in the instant case erred in holding that the payments made to the two residuary legatees without any order of the court as provided in section 1010 of the Probate Code were illegal and void and that said executor exceeded his powers in making said payments without a compliance with said provision of the Probate Code. ██ The authorities are in perfect accord upon the subject of such payments in holding that the executor acts at his peril in making said advancements, but "if he pays the right persons their proper share, he is protected, whether it is done under sanction of the court or not, or before or after passing of his account; but not if he pays the wrong person". (3 Woerner, 3d ed., American Law of Administration, p. 1937.) There is no question in this case but that the payment of $1349.83 to Inez B. Siemon was made to the proper person. No one else had any claim to the money paid to this legatee and it was error for the probate court not to allow the executor credit for this payment.

As to the payment of the sum of $1,075 to the residuary legatee, Edna B. Allen, a further question is involved. The court found that this payment was made to her on or about September 1, 1934, and that on or about September 27, 1934, a writ of execution, issued in pursuance of a deficiency judgment in favor of respondent in an amount in excess of $5,000 in an action in which respondent was plaintiff and said Edna B. Allen was defendant, was served upon said executor and the clerk of the court, and filed with the papers and pleadings in said court in accordance with section 561 of the Code of Civil Procedure.

Respondent claims by these proceedings under said writ of execution that there was garnisheed and attached all money and personal property in the hands of said executor belonging to said Edna B. Allen, including said sum of $1,075 which had been paid to said Edna B. Allen by said executor on or about September 1, 1934. No point is made that the court found that this money was paid and the execution was levied "on or about" the respective dates, stated in the court's findings. We assume therefore that according to the findings

the money was paid out by the executor some twenty-six days before the levy of the execution.

An attaching creditor, and the same rule applies respecting a judgment creditor, takes only such rights or interest as his debtor had at the time of the service of the writ of attachment. (*Walker* v. *Doak*, 210 Cal. 30, 34 [290 Pac. 290] ; *McGee* v. *Allen*, 7 Cal. (2d) 468 [60 Pac. (2d) 1026].) A garnisher stands in no better position than does the debtor. (*Clecak* v. *Dunn*, 95 Cal. App. 537 [272 Pac. 1104].) Garnishees will only be held for debts owing at the time of service of the writ, and property and credits which have been transferred or assigned by the debtor cannot subsequently be subject to garnishment as belonging to him. (*Van Orden* v. *Anderson*, 122 Cal. App. 132 [9 Pac. (2d) 572].) ''A creditor has no better claim to a fund than the beneficiary has, and when the latter has no right to maintain an action for it, garnishment proceedings against the trustee is unavailing.'' (*Walker* v. *Doak, supra.* ''The general rule is that a creditor stands in exactly the same attitude in relation to a garnished fund that the judgment debtor does and can enforce only such rights as the debtor might enforce.'' (12 R. C. L., p. 778.)

As the executor had made a legal payment to Edna B. Allen of said sum of $1,075 prior to the service of said writ of execution, no part of said sum could have subsequently been recovered from him by said Edna B. Allen. It follows therefore that no part of said sum was subject to said garnishment proceedings under said writ, and the judgment creditor acquired no rights therein as against said executor. The executor owed no duty to any creditor of any distributee, and no rights of creditors were infringed by the payment to the distributee of money in his hands belonging to said distributee, before the settlement of his account. ''Nor are any rights of creditors of a distributee of an estate infringed by the payment by the administrator to the distributee of his distributive share without notice to creditors or before the passing of his account.'' (4 Am. Jur., sec. 420, p. 815.) It has also been held that, ''There is no duty cast upon the administrators or executors to ascertain the creditors, if any, of the distributees, or to notify them of his intention to distribute the estate, and he assumes no risk, so far as they are concerned,

in paying to the distributees, before the passing of an account, the distributive shares to which they are entitled, therefore if the administrator in this case paid to the distributee the amount to which he was entitled, though paid before the passage of the administration account, no rights of attaching creditor has been infringed upon.'' (*American Agricultural Chemical Co.* v. *Scrimger,* 130 Md. 389, 393 [100 Atl. 774, L. R. A. 1917F, 394].)

There is no intimation in the findings of the court that the payment of the $1,075 to Edna B. Allen was not made in perfect good faith and without any intention on the part of the executor to obstruct the respondent in the collection of its judgment against said distributee. On the other hand, the evidence in the case shows that the affairs of the estate were largely a family matter. The executor was the son-in-law of the deceased and the husband of one of the distributees, Inez B. Siemon. The two distributees were sisters, and the daughters of the deceased. After the payment of all claims against the estate and the special bequests there was sufficient money in the hands of the executor over and above the expenses of administration to pay to each of the two residuary legatees the sum of $1,075. Without waiting for the final distribution of the estate, the executor made payments to his wife and sister-in-law, and on the hearing of the petition for final distribution asked credit for the amounts thus advanced. The authorities cited hereinbefore clearly support the claim of the executor that he be given credit for such payment, and the probate court was in error in denying this claim of the executor.

Appellant makes the further contention that the garnishment proceedings were of no validity for the reason that the provisions of section 561 of the Code of Civil Procedure were not complied with on the part of respondent. The question of the validity of said proceedings becomes material notwithstanding our conclusion that the executor was entitled to credit for the advancement of $1,075 to each of the two residuary distributees, for the reason that according to the findings of the court, after the payment of said sum to Inez B. Siemon and Edna B. Allen on September 1, 1934, there came into the hands of the executor a further sum claimed by the executor to be $665.32. On November 29, 1935, the executor

paid one-half of said amount, $332.66, to each of said two distributees. The court found that each of said legatees was entitled only to $274.83, and that the difference in these two amounts, or $57.83, was a voluntary payment, and charged the executor's account with this overpayment to each of said legatees. No exception is taken to this part of the order charging the executor's account with the sum of $57.83 paid to each of said distributees, but it is contended that the garnishment proceedings were of no validity and therefore the executor should be given credit for the sum of $274.83 which he paid to Edna B. Allen on November 29, 1935. This sum of $274.83 is referred to in the statement of facts hereinbefore set forth and together with said sum of $1,075 makes a total of $1349.83 which the court found was paid by the executor to Edna B. Allen and which the court in its final decree of distribution ordered the executor to pay to the sheriff of the county of Los Angeles in pursuance of said garnishment proceedings.

Section 561, Code of Civil Procedure, is the only authority under which the interest of a legatee in personal property in the custody of the executor may be reached by attachment or garnishment. Prior to its enactment in 1923 personal property in the hands of an executor was deemed to be in the custody of the law and as such was not subject to attachment or execution. Therefore, in order now to reach the interest of an heir or legatee in personal property in the possession of the executor by proceedings in attachment or under execution, the provisions must be followed.

As was said in *Estate of Troy,* 1 Cal. App. (2d) 732, 735 [37 Pac. (2d) 471]: "This section provided a remedy where none had theretofore existed and laid down the procedure for making the remedy effective." Did the garnishment proceedings in the instant case follow the procedure provided by said section? The undisputed facts show that a writ of execution was issued out of the superior court of the county of Los Angeles upon the judgment in favor of respondent and against said Edna B. Allen and directed to the sheriff of the county of Kern in which the executor resides. This execution was served on the executor by the sheriff of Kern County by delivering to the executor a copy of said execution, together with a notice that the personal property in his hands belonging to Edna B. Allen was attached. No copy of this

writ of execution or a copy of this notice was ever filed in the office of the clerk of the probate court of the county of Los Angeles, as required by said section 561 of the Code of Civil Procedure. Instead of following the procedure provided in said section, the record shows that a second writ of execution was issued in said action of respondent against Edna B. Allen to the sheriff of the county of Los Angeles, which was never served upon the executor, but a copy of said writ was served upon the clerk of the probate court, together with a notice that the interest of Edna B. Allen in the estate of W. W. Bennett was attached. These facts are undisputed and clearly show that respondent failed to follow the procedure provided by section 561 of the Code of Civil Procedure in order to effect a legal garnishment of the interest of a judgment debtor in personal property in the hands of an executor.

This was not, in our opinion, even a substantial compliance with the provisions of section 561 of the Code of Civil Procedure for under this procedure we have two officers levying upon the same property for the same judgment creditor in the same action. The question might well arise with the court when it came to make a distribution of the money levied upon as to which of the two officers it should order the money delivered, and in all probability that question did arise in the instant proceeding, for the court ordered the money to be paid to the sheriff of the county of Los Angeles when clearly it was the duty of the court to order the payment to the sheriff of the county of Kern, if the provisions of section 561 of the Code of Civil Procedure had been complied with. This section provides that "delivery of such property shall be ordered to the officer making the levy", and the officer making the levy is the officer "serving the personal representative of the decedent" (in this case the executor). The provisions of section 561 of the Code of Civil Procedure are clear and unambiguous. No difficulty should be experienced in following the procedure therein outlined. By so doing the rights of all parties will be protected and the confusion which now exists in the present proceeding as to the officer to whom the money should be ordered paid will be avoided.

Furthermore, section 561 of the Code of Civil Procedure is a departure from the well-settled common-law rule that prop-

erty *in custodia legis* is not subject to attachment or garnishment.

The respondent having failed to follow the procedure outlined in said section 561 of the Code of Civil Procedure cannot claim the benefit of this section, and therefore acquired no interest in the personal property in the custody of the executor and belonging to the judgment debtor in the civil action.

▇ The probate court correctly held that the executor had overpaid the family allowance in the sum of $110. While respondent has no interest in any of the property of said estate and this overpayment is of no concern to respondent, it was the duty of the probate court without objection of any person whatever to carefully scrutinize the final account of the executor and disallow any item therein which was not a proper and legal charge against the estate.

For the foregoing reasons the order and decree appealed from is reversed with directions to the probate court to allow as credit to the executor in his final account and petition for distribution the two items of $1349.83 paid to each of the two residuary legatees, Inez B. Siemon and Edna B. Allen, as advancements made to them by said executor during the administration of said estate on account of the distributive share to which they were respectively entitled under the last will and testament of the said W. W. Bennett, deceased.

Langdon, J., Shenk, J., Seawell, J., Edmonds, J., and Houser, J., concurred.