**94**

Paul S. HOWELLS, Executor of the Estate of Adele Cannon Howells, deceased, Appellant,

v.

Charles FOX, District Director of U. S. Treasury Department, Internal Revenue Service, Appellee.

No. 5672.

United States Court of Appeals
Tenth Circuit.

Dec. 19, 1957.

George E. Bridwell, Salt Lake City, Utah, for appellant.

Melvin L. Lebow (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Melva Graney, Louise Foster, Attys., Dept. of Justice, Washington, D. C., and A. Pratt Kesler, U. S. Atty., Salt Lake City, Utah, on the brief), for appellee.

Before HUXMAN, MURRAH and BREITENSTEIN, Circuit Judges.

HUXMAN, Circuit Judge.

This case involves the validity of a deficiency estate tax assessment against the estate of Adele Cannon Howells in the amount of $49,641.76.

The facts are simple and not in dispute. The will of David P. Howells, deceased husband of Adele Cannon Howells, was admitted to probate in the State of California in 1939. Adele was appointed executrix of the estate and administered it as such until her death in 1951. After her death, her estate was probated. The probate proceedings of her estate showed an estate tax liability of $60,338.74. An audit and review of the tax return was made and based thereon an additional tax of $49,641.76 was assessed. Paul S. Howells, executor of her estate, paid this additional tax under protest and then instituted this action to recover $41,132.13 of the same. He has appealed from a judgment of the court in favor of the defendant and dismissing the complaint for failure to state a cause of action.

The controversy centers around the sum of $99,814.20, which Adele, as executrix of her husband's estate paid to herself as beneficiary under the will. It is

asserted that since she paid this sum to herself, without first securing the approval of the probate court, it constituted an unlawful distribution of assets of her husband's estate for which she is liable. The contention is that this constitutes a debt against her estate which must be deducted from the gross amount thereof in arriving at the amount of the estate tax due from her estate.

The $99,814.20 which as executrix of her deceased husband's estate she distributed to herself was distributed under the third paragraph of Howells' will, which reads as follows:

"Third: I hereby give, devise and bequeath the whole of my property and estate, * * * unto my beloved wife, Adele Cannon Howells, if she shall survive distribution of my estate, and if not, then to my children * * * in equal proportions, * * * "

For the purpose of this opinion, it may be conceded, as contended for by appellant, that immediately upon the death of Howells, title to his property vested in his children, and all that Adele had was an expectancy, so to speak, or the right to receive the property if she survived distribution of the estate. But the question is, what was meant by distribution? We are in accord with the conclusion of the trial court in a memorandum opinion that the will did not contemplate a final distribution as a prerequisite to the vesting of any assets in Adele. We further agree with the court's statement that "Plaintiff concedes that the will did not contemplate a decree of final distribution in the matter of her husband's estate as a prerequisite to the vesting of any assets in Mrs. Howells." We think this statement finds support in the record. During her administration of the estate, she made the following partial distribution to herself: property located in Wyoming, 746 shares of Utah-Idaho Sugar Company stock, 2,500 shares Amalgamated Sugar Company stock; and a one-half interest in 5,000 shares of Wilshire Boulevard Center, Inc. stock. All these distributions were made upon orders of approval by the court, with the exception of the Utah-Idaho Sugar Company stock. This stock was assigned by her without first securing the approval of the court, although after the assignment a court order of approval was secured. None of these transfers are challenged by appellant. Throughout their brief they speak of formal approval of distribution. Thus they state in the brief, "Here there was no formal distribution."

The precise question then is, was the transfer of the sum of $99,814.20 void because she did not first obtain an order of approval from the court? We think not. Since the question concerns California law, only cases of that state will be considered. Appellant relies on a line of cases such as In re Jameson's Estate, 93 Cal.App.2d 35, 208 P.2d 54; In re Clarke's Estate, 103 Cal.App. 243, 284 P. 231; and In re Hampe's Estate, 85 Cal. App.2d 557, 193 P.2d 133. None of those cases involved the precise question we have here. In the Jameson case the court considered an order for partial distribution of income from a life estate and, while the court talks about conditions precedent for the vesting of title, all the court really held was that the order for the distribution of this income was erroneous and void, because the income was within the control of the administrator, CTA, during the period of administration, subject to the payment of debts and other charges against the estate and was in fact needed to pay expenses and costs of administration. Neither the Clarke case nor the Hampe case involved the validity of partial distributions. In the Clarke case the will bequeathed legacies "to be 'distributed in the due course of the settlement'" of the estate. All the court held was that for the legatees to take they must be alive at the time the estate was distributed. That was also the decision in the Hampe case. That will contained a provision, providing that in event that Martha Ahnden should die prior to distribution all interest in the properties bequeathed to her shall fail. There had been a partial distribution to her during the probation of the estate in

the sum of $7,000. Thereafter, she died before the estate was closed and her heirs sought to obtain the balance of the legacy. All the court held was that since she did not survive the decree of distribution her legacy to the balance failed. The partial distribution of $7,000 was not involved in the case.

We think that the case that is decisive of the question is In re Bennett's Estate, 13 Cal.2d 354, 90 P.2d 84, 87, 126 A.L.R. 771. In that case the executor made a distribution to residuary legatees without first obtaining a court order. Thereafter, a creditor of the residuary legatees sought to garnishee these funds on the ground that the distribution being made without the approval of the court was illegal and void. The court in its opinion, alluding to other cases on the question, stated that " * * * the only reasonable construction to be placed upon these decisions is that it is mandatory on the probate court to credit the executor or administrator with the amounts thus advanced to legatees when no rights of third parties have intervened.", and further held that the executor making payments to those entitled to them without first securing an order of approval from the court was protected.

Since Howells' will contemplated partial distributions during the period of administration, the executrix had a right to make such distributions to herself. Had Adele filed an application with the court for a distribution to herself of these funds, the court would have been required to approve it. It had no discretion in the matter. Its action was solely ministerial. Failure to secure this approval in advance of the distribution affected no one's rights, and the partial distributions were lawfully made by the executrix to herself as a legatee and her estate is not indebted to appellants because thereof. There being no debt due from her estate for these sums, it follows that they may not be taken as a deduction for the purpose of determining estate tax liability.

A second assignment of error relates to the value which was placed upon the interest Adele held in a note of $230,000 given by the Howells Livestock Company, Inc. The stock in this company was owned one half by David P. Howells and the other half by his wife, Adele Cannon Howells. This note was issued to David P. Howells. During his lifetime he endorsed and delivered it to his wife. Thereafter, by assignment she gave each of her three children an interest in this note and in 1950 she gave each of them an additional interest in the same manner. The total amounts of these assignments equalled $79,800 of the principal of the note. Mrs. Howells retained the remainder.

The assignments made by Mrs. Howells to her children are identical in substance and are as follows:

"For Value Received * * * Adele Cannon Howells hereby sells, assigns, transfers and delivers unto [the assignee] $20,600.00 of the principal of that certain promissory note which was in the original amount of $230,000.00 * * * together with interest on said principal of $20,600.00 at the rate of seven (7%) percent per annum * * *

"The undersigned Adele Cannon Howells hereby sells, transfers and delivers unto [the assignee] an undivided interest in said note to the extent of said $20,600.00 of the principal and interest on the same as above set forth, * * * "

The difficulty comes about because at the time of her death this note was not worth the face value thereof. It is appellant's contention that Mrs. Howells assigned to her three children the total sum of $79,800 and that this must be deducted from the appraised value of the note in determining the value of the interest retained by Adele.

We think the critical and determinative language of these assignments is "an undivided interest in said note" and that that evidenced the intent of the assignor that she and the assignees should hold this note in common and that their interest was that percentage stated in the assignment which it bore to the face value

of the note. When Adele assigned an undivided interest to the extent of said $20,-600, she in effect said that she assigned a percentage of that note which the $20,600 bore to the face value of the note. To us the terms of the assignments clearly indicate that each assignee was to receive an undivided interest in the whole of the note in the portion of the stated sum to the face amount of the note. We do not think that by a consideration of the assignments in their entirety Adele intended to transfer a guaranteed sum of money which would be a lien upon the value of the note in derogation of the undivided interest which she retained in herself. Apparently this question has not arisen in California, because no cases have been cited and our search has failed to reveal any.

An examination of the entire record, the briefs and the able opinion of the trial judge lead us to the conclusion that the judgment is correct and it is, therefore, affirmed.